## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SHELBY ANN ANDERS**                                                       **CIVIL ACTION**

**VERSUS**                                                                          **NO. 25-869**

**THE TOWN OF FRANKLINTON, et al.**                              **SECTION: "G"(5)**

<u>**ORDER AND REASONS**</u>

Before the Court are Defendants the Town of Franklinton and Justin Brown's (collectively, "Defendants") Rule 12(b)(6) Motions to Dismiss.[1] In this litigation, Plaintiff Shelby Ann Anders ("Plaintiff") is suing Defendants the Town of Franklinton, fictitiously named police officers (the "Officers"), and Justin Brown, the Chief of Police of the Franklinton Police Department ("Chief Brown"), for damages related to Plaintiff's arrest by the Franklinton Police Department ("FPD") in May 2024.[2] In the instant motions, Defendants argue Plaintiff's claims are time barred and fail to state a claim for which relief can be granted.

On July 30, 2025, Defendants filed the instant Motion to Dismiss for Failure to State a Claim[3] and Motion to Dismiss Punitive or Exemplary Damage Claims.[4] Plaintiff opposed the motions.[5] Defendants then filed a Reply[6] brief in further support of the motions. Considering the motions, the memoranda in support and in opposition, the record, and applicable law, the Court grants the motions in part, denies the motions in part, and grants Plaintiff leave to file an Amended

---

[1] Rec. Docs. 11, 12.

[2] Rec. Doc. 1 at 4–9.

[3] Rec. Doc. 11.

[4] Rec. Doc. 12.

[5] Rec. Doc. 16.

[6] Rec. Doc. 22.

Complaint and a Rule 7(a)(7) reply tailored to the qualified immunity defense.

## I. Background

Plaintiff alleges on May 1, 2024 she was in Franklinton, Louisiana, receiving an estimate to get a fence repaired.[7] Plaintiff claims she parked her truck to inspect the fence, when she "noticed two Caucasian women parking a vehicle behind her truck."[8] Plaintiff contends she repeatedly asked the two individuals to move their vehicle to allow her to leave in her truck.[9] Plaintiff states that the two women refused to move their vehicle and told her that they were "going to say she tried to hit" them.[10] Plaintiff asserts Franklinton Police Officers then arrived to the scene and began investigating by getting statements from the two women.[11] Plaintiff alleges that she told the officers that she did not have any audio or video recording of the altercation in response to their questioning.[12] Plaintiff claims she was subsequently arrested and "charged with Attempted Murder and Obstruction."[13]

Plaintiff was detained at the Washington Parish Jail for three days and subjected to allegedly "unsafe and unsanitary conditions" during that time.[14] Plaintiff states "[t]he officers failed to investigate, take relevant statements from Mr. or Mrs. Anders who were both present on

---

[7] Rec. Doc. 1 at 4.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at 4–5.

the scene, or assess for any other bystanders or witnesses."[15] Further, Plaintiff asserts "both officers used unconstitutional force and restraint to stop and detain" her.[16] Plaintiff also maintains that the Franklinton Police Department ("FPD") "has engaged in a pattern and practice of unconstitutional behaviors, stops, and arrests based on race."[17] Plaintiff claims to have been arrested by FPD on September 4, 2020, and she claims she has encountered similar behavior from FPD during prior interactions on nine other occasions spanning from 2018 to 2023.[18]

On May 2, 2025, Plaintiff filed a Complaint against Defendants in this Court.[19] In the Complaint Plaintiff alleges causes of action under Louisiana state law and 42 U.S.C. §§ 1983, 1985, 1986, and 1988.[20] Specifically, the Complaint alleges: (1) false imprisonment; (2) false arrest; (3) excessive force;[21] (4) violations of the Fifth, Eighth, Ninth, and Fourteenth Amendments; (5) that Defendants have a custom of negligent hiring, training, supervision, and retention of deputies; (6) that Defendants conspired to cover up the allegedly false arrest; (7) that Defendants never took action to investigate any of the involved deputies; and (8) liability pursuant to Louisiana Civil Code articles 2315 and 2316 for negligence, assault, battery, negligent and intentional infliction of emotional distress, defamation, and slander.[22]

---

[15] *Id.* at 5.

[16] *Id.*

[17] *Id.* at 6.

[18] *Id.*

[19] Rec. Doc. 1.

[20] *Id.* at 2.

[21] The Complaint uses the term "unconstitutional force," but the relevant caselaw typically refers to this type of claim as "excessive force." Therefore, both terms are used interchangeably to discuss the same claim.

[22] *Id.* at 5–8.

Defendants filed the instant Rule 12(b)(6) Motions to Dismiss on July 30, 2025.[23] Plaintiff filed a Response[24] in opposition to the motions on September 12, 2025. Defendants filed a Reply[25] in further support of the motions on September 15, 2025.

## II. Parties' Arguments

### A.    *Defendants' Arguments in Support of Their Motions*

In support of Defendants' initial Motion to Dismiss,[26] they argue that Plaintiff's claims under state and federal law were filed after the prescriptive period and statute of limitations expired, respectively.[27] Defendants assert that under Louisiana Civil Code article 3492 the prescriptive period for the state law claims raised here is one year from the date the alleged wrong occurred.[28] Further, Defendants state that "in the context of false arrest and false imprisonment cases, those causes of action begin to accrue *on the date of arrest*."[29] Similarly, regarding Plaintiff's unconstitutional force claim, Defendants argue such a cause of action would begin to accrue "on the date that plaintiff was allegedly subjected to the force; here the date of the arrest."[30]

Defendants also point out that a federal civil rights claims under 42 U.S.C. §§ 1981, 1983, and 1985 do "not contain a specific statute of limitations."[31] Defendants assert that claims brought

---

[23] Rec. Docs. 11, 12.

[24] Rec. Doc. 16.

[25] Rec. Doc. 22.

[26] Rec. Doc. 11.

[27] Rec. Doc. 11-1 at 10.

[28] *Id.*

[29] *Id.* at 10–11.

[30] *Id.* at 11.

[31] *Id.*

under those statutes "borrow the analogous state law prescriptive period."[32] Defendants claim that the statute of limitations for a Section 1983 claim begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."[33] Defendants argue that Plaintiff must have been aware of "her claims of detention pursuant to warrantless arrest at the moment it occurred."[34] Hence, Defendants posit that because Plaintiff was arrested on May 1, 2024, and the Complaint was not filed until May 2, 2025, all claims are time barred because they were filed more than one year after they began to accrue.[35]

Regarding Plaintiff's Fifth Amendment claim, Defendants assert that such claims can only be brought against federal government actors.[36] Defendants point out that because they are not federal actors, Plaintiff does not have a viable claim against them.[37] Defendants request that the Court dismiss Plaintiff's Fifth Amendment claim because Defendants are state actors, and such claims do not apply to them.[38]

Regarding Plaintiff's Eighth Amendment claim, Defendants submit that the Complaint contains no specific allegations as to how said rights were violated.[39] Further, Defendants claim that "the Eighth Amendment's cruel and unusual prong does not apply to pre-trial detainees."[40]

---

[32] *Id.*

[33] *Id.* at 12 (citing *Russell v. Bd. Of Trustees*, 968 F.2d 489, 493 (5th Cir. 1992)).

[34] *Id.*

[35] *Id.*

[36] *Id.* at 13 (citing *Ristow v. Hansen*, 719 F. App'x 359, 364 (5th Cir. 2018)).

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.* at 14.

Plaintiff has only been detained in a pretrial capacity, therefore Defendants argue that Plaintiff's Eighth Amendment claims should be dismissed.[41] Likewise, Defendants assert that Plaintiff's Ninth Amendment claims should be dismissed because, "[t]he Ninth Amendment does not confer substantive rights upon which civil rights claims may be based."[42]

Regarding Plaintiff's Fourteenth Amendment claims, Defendants contend that such claims "include substantive and procedural due process under the Due Process Clause, equal protection of the law under the Equal Protection Clause, as well as individual rights from the first nine Amendments to the Constitution incorporated to apply to the states under the Due Process Clause."[43] Defendants argue that the Complaint contains no specific allegations of a Fourteenth Amendment claim under any of these categories and therefore this claim must be dismissed.[44]

Defendants also assert that Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1986 must be dismissed.[45] Defendants maintain that because Plaintiff has not stated an underlying Constitutional violation committed by Defendants Section 1983 is not the appropriate vehicle with which to bring a claim.[46] Further, Defendants argue that Plaintiff has merely alleged a conclusory conspiracy under Section 1985 and therefore fails to meet the pleading standard of alleging an

---

[41] *Id.*

[42] *Id.* (citing *Johnson v. Texas Bd. of Crim. Just.*, 281 F. App'x 319, 320 (5th Cir. 2008)).

[43] *Id.*

[44] *Id.* at 14–16.

[45] *Id.* at 16–17.

[46] *Id.*

underlying factual basis for such a conspiracy.[47] Hence, Defendant asserts Plaintiff's Section 1986 claim, which is dependent on a plausible Section 1985 claim, should fail as well.[48]

To be successful on a *Monell* claim, Defendants state that Plaintiff "must prove an underlying constitutional deprivation, caused by the execution of a policy or custom of a municipality."[49] Further, Defendants point out that a *Monell* claim can arise through "the failure to train or inadequate training of municipal officers."[50] However, the potentially liable decision maker "must have notice that the training program does not prevent constitutional violations and must continue an adherence to an approach that they knew or should have known had failed to prevent such constitutional violations before those actions can rise to a level of deliberate indifference."[51] Defendants argue that the Complaint only contains conclusory allegations of Chief Brown's deliberate indifference rather than a specific policy or custom which led to the alleged violation of Plaintiff's rights.[52] Additionally, Defendants claim that the Complaint does not reference a specific policy by the Town of Franklinton that caused the alleged constitutional violations.[53] Therefore, Defendants state that *Monell* liability cannot be established and the corresponding claims should be dismissed.[54]

---

[47] *Id.* at 17.

[48] *Id.*

[49] *Id.* at 18.

[50] *Id.*

[51] *Id.* at 18–19.

[52] *Id.* at 19.

[53] *Id.*

[54] *Id.*

Defendants also assert that Chief Brown and the Officers are entitled to qualified immunity for claims made against them in their individual capacities.[55] Alternatively, Defendants argue that in order to establish liability against Chief Brown in his individual capacity Plaintiff "must allege specific conduct giving rise to a constitutional violation."[56] Defendants contend that the Complaint contains no "allegations that Chief Brown was present at the scene, that he was involved in the investigation or arrest or had any personal involvement whatsoever."[57] Further, Defendants state that "it is well-settled that supervisory officers cannot be held liable under Section 1983 for the actions of subordinates on a theory of vicarious liability."[58] Therefore, Defendants argue that the claims against Chief Brown and the Officers in their individual capacities should be dismissed.[59]

Lastly, Defendants assert that Plaintiff does not have a cognizable claim based on her allegation that Chief Brown "never took action to investigate."[60] Defendants cite *Shields v. Twiss*, to establish that "there is no constitutional right to an investigation."[61] Therefore, Defendants argue that any violation of Plaintiff's rights that may have resulted from Chief Brown's alleged failure to investigate would need to be judged under the standards of that separate violation.[62]

---

[55] *Id.* at 22; Rec. Doc. 12-1 at 5.

[56] Rec. Doc. 11-1 at 23.

[57] *Id.* at 22.

[58] *Id.* at 23.

[59] *Id.*

[60] *Id.* at 24.

[61] *Id.* (citing 389 F.3d 142 (5th Cir.2004)).

[62] Rec. Doc. 11-1 at 24.

8

In support of Defendants' Motion to Dismiss Punitive or Exemplary Damage Claims,[63] they argue that the Town of Franklinton, Chief Brown in his official capacity, and the Officers in their official capacities are immune from punitive damages.[64] Defendants cite *Lewis v. Goodie*, to assert that municipalities are immune from "punitive damage awards under federal law."[65] Defendants contend that punitive damages are not appropriate for Plaintiff's state law claims because "it is well settled under Louisiana state law that punitive damages are not allowed in civil cases unless specifically provided for by statute."[66] Defendants state that no applicable Louisiana statute provides for punitive damages based on the claims made in the Complaint.[67] Therefore, Defendants request that this Court dismiss the request for punitive damages under both federal and state law.

**B.      *Plaintiff's Arguments in Opposition***

In opposition to Defendants' motions, Plaintiff argues she has "plead valid causes of action against Defendants on the face of the Complaint."[68] Additionally, Plaintiff claims she is entitled to discovery and that Defendants' motions are premature.[69] Therefore, Plaintiff requests that the

---

[63] Rec. Doc. 12.

[64] Rec. Doc. 12-1 at 4–6.

[65] *Id.* at 4 (citing 798 F. Supp. 382, 391 (W.D. La. 1992))

[66] *Id.* at 5 (citing *Vincent vs. Morgan's Louisiana & T.R. & S.S. Co.*, 140 La. 1027, 74 So. 541 (1917)).

[67] *Id.* at 6.

[68] Rec. Doc.16 at 2.

[69] *Id.*

Court deny the motions.[70] Alternatively, Plaintiff requests that she be permitted to proceed with limited discovery or amend the Complaint to cure any defects.[71]

Regarding Defendants' argument that Plaintiff's claims are time barred, Plaintiff states that Defendants concealed the police report associated with her arrest and therefore "are not granted the benefit of an argument of prescription."[72] Plaintiff claims she requested the police report in this matter on or around "May 2024, February 2025, and at least one other time prior to filing of the instant suit."[73] Further, Plaintiff alleges neither she nor this Court had received the police report from FPD as of the date her opposition was due and therefore the Court has not been able to weigh any argument regarding prescription.[74]

Plaintiff argues that Defendants have erroneously misapplied the holding in *Garcia v. San Antonio, Texas* to the case at bar.[75] Plaintiff asserts that *Garcia* holds "that Fourth Amendment claims for detention caused by the wrongful institution of legal process accrue when criminal proceedings end in the Plaintiff's favor."[76] Plaintiff contends that like the plaintiff in *Garcia* her detention was also "caused by the wrongful institution of legal process."[77] Thus, Plaintiff states that applying *Garcia* to the instant matter should result in the prescriptive period for her claims

---

[70] *Id.*

[71] *Id.*

[72] *Id.* at 4.

[73] *Id.*

[74] *Id.* Defendants subsequently filed a copy of the corresponding police report with the Court as Rec. Doc. 22-1.

[75] Rec. Doc. 16 at 14 (citing 784 F. App'x 229, 232 (5th Cir. 2019)).

[76] *Id.* at 4–5.

[77] *Id.* at 5.

accruing when criminal proceedings from the May 1, 2024, arrest end in Plaintiff's favor.[78] Because Plaintiff's criminal case is still pending, she claims the one-year prescriptive period has not yet run.[79]

Additionally, Plaintiff argues that the excessive force claim arising from her detention in Washington Parish Jail is not time barred.[80] Plaintiff asserts that her alleged mistreatment continued after her May 1, 2024 arrest, during the following days she was detained.[81] Therefore, Plaintiff states the one-year prescriptive period would not have expired by May 2, 2025, when the Complaint was filed in this case.[82]

In response to Defendants' secondary argument that the Complaint does not contain well-plead facts to support the claims for excessive force or false arrest, Plaintiff contends such facts are plead in "vivid detail."[83] Plaintiff also argues that the Complaint contains well plead facts to support claims under 42 U.S.C. §§ 1983, 1985, and 1986.[84] Plaintiff asserts that she has brought a plausible *Monell* claim under Section 1983 because she has specified multiple "incidents of the Town of Franklinton and/or Chief Justin Brown's incompetency in managing various aspects [of public policy], amounting to deliberate indifference to the rights of citizens, to include the Plaintiff."[85] Further, Plaintiff alleges that the Complaint "explicitly alleges that Defendants'

---

[78] *Id.*

[79] *Id.* at 5–6.

[80] *Id.* at 6.

[81] *Id.*

[82] *Id.* at 6–7.

[83] *Id.* at 7.

[84] *Id.*

[85] *Id.* at 7–8.

negligence . . . did in fact amount to deliberate indifference."[86] Plaintiff states that the Complaint alleges that the Officers were "acting pursuant to direct orders and protocols from" the Town of Franklinton and Chief Brown.[87] Therefore, Plaintiff argues *Monell* liability of the municipality and Chief Brown in his official capacity has been sufficiently plead.[88]

In response to Defendants' qualified immunity defense Plaintiff asserts such a defense is premature before this Court at least allows limited discovery on that issue.[89] Further, even if Chief Brown is entitled to qualified immunity in his individual capacity Plaintiff claims he is still liable in his official capacity.[90] Additionally, Plaintiff states "additional discovery is also necessary to determine whether the actions of the officers involved in Plaintiff's arrest and subsequent detainment are subject to qualified immunity."[91] Thus, Plaintiff asserts that the "Complaint contains well-plead facts that would defeat Defendants' qualified immunity defense, but if this Court disagrees, Plaintiff respectfully request[s] that she be granted additional time to conduct discovery regarding that issue instead of dismissing claims at this early part of litigation."[92] Should this Court determine that she has not adequately plead her other claims, Plaintiff requests that she be permitted limited discovery to reveal information that would support those claims.[93]

---

[86] *Id.* at 8.

[87] *Id.* at 8.

[88] *Id.*

[89] *Id.* at 9.

[90] *Id.*

[91] *Id.* at 10.

[92] *Id.* at 9.

[93] *Id.* at 10.

C.    *Defendants' Arguments in Reply*

Defendants reply by reasserting their chief argument that the Complaint is untimely because it was filed more than one year after the arrest took place.[94] Defendants argue that "no amount of discovery is going to change the date that she was arrested [and] allegedly subjected to excessive force."[95] Additionally, Defendants assert it is immaterial that Plaintiff did not have a copy of the related police report until after the deadline for filing her opposition, because "a copy of the police report would not change the date she was arrested."[96] Further, if any of Plaintiff's claims are contingent on a "favorable termination of criminal proceedings," Defendants submit only those claims should survive the instant motions.[97]

Defendants point out that Washington Parish, rather than Defendants, manages and operates the Washington Parish Jail where Plaintiff's pretrial detention occurred.[98] Therefore, Defendants argue any claims that allegedly arose during Plaintiff's detention must be made against Washington Parish.[99] Thus, Defendants assert if Plaintiff "wanted to pursue a claim for the alleged excessive force, unsafe or unsanitary conditions she faced during her detention in the Washington Parish Jail, she needed to timely sue Washington Parish; she did not do so."[100]

---

[94] Rec. Doc. 22 at 2.

[95] *Id.* at 1–2.

[96] *Id.* at 2.

[97] *Id.* at 2–3.

[98] *Id.* at 3.

[99] *Id.*

[100] *Id.*

Defendants also reiterate that the Complaint "does not meet the *Monell* standard."[101] Defendants state, Plaintiff has failed to plead a specific policy of the Town of Franklinton that deprived Plaintiff of a constitutional right.[102] Further, Defendants contend that Plaintiff's "factually inaccurate allegations do not support a widespread custom or practice" of ignoring her complaints to FPD.[103]

Lastly, Defendants argue that Plaintiff cannot pursue punitive damages against any Defendant in their individual capacity because they are entitled to qualified immunity.[104] Additionally, Defendants assert that no allegations against Chief Brown could amount to individual liability regardless of a qualified immunity defense.[105] However, if the Court is not convinced that Defendants are entitled to qualified immunity, Defendants request that the Court limit discovery to this issue.[106]

## III. Legal Standard

### A.    *Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[107] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[108] "To survive a motion to dismiss, a

---

[101] *Id.*

[102] *Id.* at 3–4.

[103] *Id.* at 4.

[104] *Id.* at 5.

[105] *Id.*

[106] *Id.*

[107] Fed. R. Civ. P. 12(b)(6).

[108] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[109] "Factual allegations must be enough to raise a right to relief above the speculative level."[110] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[111]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[112] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[113] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[114] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[115] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[116] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[117] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each

---

[109] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[110] *Twombly*, 550 U.S. at 555.

[111] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[112] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[113] *Iqbal*, 556 U.S. at 678–79.

[114] *Id.* at 679.

[115] *Id.* at 678.

[116] *Id.*

[117] *Id.*

element of the asserted claims.[118] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[119]

## B.    Statute of Limitations

Statute of limitations is an affirmative defense.[120] When a defendant seeks dismissal on statute of limitations grounds, generally the defendant bears the burden of proof to show the claim is time barred.[121] Nevertheless, "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[122]

## IV. Analysis

## A.    Claims for Which Relief Cannot be Granted

Before addressing the timeliness argument, the Court begins with Defendants' argument that several of Plaintiff's claims are not cognizable under federal law. Even if Plaintiff can establish that her federal claims are timely, several of them lack the facial plausibility required to survive a motion to dismiss. Regarding Plaintiff's Fifth Amendment claim, Defendants argue that it should be dismissed because Defendants are state actors, and the violation of rights must be perpetrated by a federal actor. The Fifth Circuit has reinforced this requirement in *Ristow v. Hansen*, where it held that "[t]he Fifth Amendment applies only to violations of constitutional rights by the United

---

[118] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[119] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[120] Fed. R. Civ. P. 8(C)(1).

[121] *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011) (citations omitted).

[122] *Doe 1 v. City View Independent Sch. Dist.*, No. 24-10592, 2025 WL 2537001, at *3 (5th Cir. 2025) (per curiam); *see also Frame*, 657 F.3d at 240 (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

States or a federal actor."[123] Hence, the Court must dismiss Plaintiff's Fifth Amendment claim because no defendants in this matter are federal actors.

Regarding Plaintiff's Eighth Amendment claim, the Supreme Court has recognized that "the conditions or restrictions of pretrial detention . . . implicate only the protection against deprivation of liberty without due process of law."[124] The Fifth Circuit expanded on this rule by stating "[t]he constitutional rights of a pretrial detainee ... flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment."[125] Because Plaintiff has only alleged pretrial detention, rather than detention following a criminal conviction, her rights under the Eighth Amendment have not been implicated. Thus, there can be no violation of Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment. Therefore, the Court must dismiss Plaintiff's Eighth Amendment claim. Relatedly, the Supreme Court has consistently recognized that the Ninth Amendment does not confer an independent source of rights that can be enforced in federal court.[126] Hence, the Court must dismiss Plaintiff's Ninth Amendment claim.

**B.**    ***Timeliness of State Law Claims***

Defendants argue that Plaintiff's state law claims have prescribed because they were filed one year and one day after her arrest. Under Louisiana Civil Code article 3492 a plaintiff has one year from the date on which the alleged wrong occurred to file a claim for a tort-related violation

---

[123] 719 Fed. App'x 359, 364 (5th Cir. 2018) (citation omitted).

[124] *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

[125] *Martinez v. City of N. Richland Hills*, 846 Fed. App'x 238, 241 (5th Cir. 2021) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996).

[126] *See Johnson v. Texas Bd. of Crim. Just.*, 281 Fed. App'x 319, 320 (5th Cir. 2008) ("The Ninth Amendment does not confer substantive rights upon which civil rights claims may be based.")

of her constitutional rights.[127] All claims arising under Louisiana Civil Code articles 2315 and 2316 are subject to this prescriptive period.[128] Specifically, Plaintiff's state law claims for false arrest, false imprisonment, excessive force, negligence, assault, battery, defamation, slander, and negligent and intentional infliction of emotional distress are subject to this prescriptive period.

Under Louisiana law, there is a "well-settled concept that prescription commences to run from the day injury or damage is sustained."[129] Consistent with this principle, the Louisiana Supreme Court has held that the prescriptive period for false arrest and false imprisonment claims begin to accrue on the date of arrest.[130] The Complaint states that the incident leading to Plaintiff's arrest occurred on May 1, 2024, and the Complaint suggests that Plaintiff was subsequently arrested and charged with Attempted Murder and Obstruction.[131]

The police report attached to Defendants' reply memorandum shows that Plaintiff was arrested without a warrant on the evening of May 1, 2024.[132] However, the police report also shows that an arrest warrant was signed at 5:17 AM on May 2, 2025.[133] The arrest warrant was signed by

---

[127] *See Watts v. Graves*, 720 F.2d 1416, 1423 (5th Cir. 1983); La. Civ. Code art. 3492. In 2024, La. Civ. Code art. 3492 was amended to provide for a two-year statute of limitations for torts which occur after July 1, 2024. The events sued upon herein occurred in May 2024. The version of art.3492 in effect on the date of the incident sued upon provides for a one year statute of limitations for torts.

[128] *See C.P. v. Roman Cath. Diocese of Lake Charles*, No. 24-01615, 2025 WL 662821, at *1 (W.D. La. Feb. 28, 2025) (stating that claims arising under Louisiana Civil Code articles 2315 and 2316 "would ordinarily be time-barred under Louisiana's one-year prescriptive period", with the exception of a ten-year period for claims arising from child abuse); *Bowie v. Hodge*, No. 20-2441, 2021 WL 53312, at *10 (E.D. La. Jan. 6, 2021) (holding that claims under Louisiana Civil Code articles 2315 and 2316 were prescribed when they occurred more than one year after the complaint was filed).

[129] *See Eaglin v. Eunice Police Dep't*, 2017-1875, p. 8 (La. 06/27/18), 319 So. 3d 225, 229.

[130] *Id.* at 230 (holding false arrest and false imprisonment claims are subject to a one-year prescriptive period accruing on the date of arrest).

[131] Rec. Doc. 1 at 4.

[132] Rec. Doc. 22-1 at 16.

[133] *Id.* at 26–28.

Commissioner Dan Foil, and it finds that Plaintiff was "lawfully arrested upon probable cause, without a warrant."[134] The parties have not provided any briefing on whether this finding of probable cause has any impact on when the claims began to accrue under Louisiana law. Considering that Plaintiff did not have a copy of the police report when the Complaint or the opposition to the Motions to Dismiss was filed, the Court will grant Plaintiff leave to file an Amended Complaint to clarify this issue.

The Complaint also contains insufficient information for the Court to determine whether prescription was suspended. When a plaintiff is unable to exercise her cause of action when it accrues prescription may be suspended under the civil law doctrine of *contra non valentem agere nulla currit praescriptio*.[135] Plaintiff merely states that the police report regarding the relevant arrest was withheld from her and therefore the prescriptive time bar should not apply to her.[136] Plaintiff has not explained why her ability to obtain the police report would be relevant to advancing her claims against Chief Brown or the City of Franklinton. However, it appears that the identities of the arresting officers were unknown to Plaintiff, as she names them as John Does in the Complaint. The naming of a John Doe defendant does not interrupt prescription under Louisiana law.[137] Therefore, whether she made diligent efforts to obtain the police report may be relevant to the issue of whether the doctrine of *contra non valentem* could apply to Plaintiff's claims against the unnamed officers. Accordingly, the Court will grant Plaintiff leave to amend the Complaint to clarify this issue.

---

[134] *Id.* at 28.

[135] *Eaglin*, 319 So. 3d at 229.

[136] Rec. Doc. 16 at 4.

[137] *Templet v. Johns*, 417 So. 2d 433, 437 (La. App. 1 Cir.), *writ denied*, 420 So. 2d 981 (La. 1982)(citations omitted)("suit against 'John Doe (electrical contractor)' did not interrupt prescription as concerns [the defendant whose true name was later substituted for the fictitious name] unless same was interrupted by other means.").

The Complaint also does not contain sufficient factual allegations to determine when the alleged excessive force, negligence, assault, battery, defamation, slander, and negligent and intentional infliction of emotional distress occurred.[138] In opposition to the instant motion, Plaintiff suggests that she was subject to excessive force, assault, and battery during her detention at Washington Parish Jail.[139] However, there are no factual allegations regarding these alleged incidents in the Complaint. The Complaint also does not include factual allegations regarding the claims of negligence, defamation, slander, or negligent and intentional infliction of emotional distress. Therefore, the Court will grant Plaintiff leave to file an Amended Complaint to clarify the factual basis for her claims of excessive force, negligence, assault, battery, defamation, slander, and negligent or intentional infliction of emotional distress.

C.    *Timeliness of Federal Law Claims*

Regarding Plaintiff's federal law claims, the Court addresses Plaintiff's Sections 1983, 1985, and 1986 claims in turn. "Section 1983 does not prescribe a statute of limitations. Instead, '[t]he statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state.'"[140] Thus, Louisiana Civil Code article 3492's one year statute of limitation applies here. However, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law."[141] "A section 1983 action accrues, and the statute of limitations begins to run when the 'plaintiff knows or has

---

[138] *Templet v. Johns*, 417 So. 2d 433, 437 (La. App. 1 Cir.), *writ denied*, 420 So. 2d 981 (La. 1982)(citations omitted)("suit against 'John Doe (electrical contractor)' did not interrupt prescription as concerns [the defendant whose true name was later substituted for the fictitious name] unless same was interrupted by other means.").

[139] Rec. Doc. 16 at 6.

[140] *Heilman v. City of Beaumont*, 638 Fed. App'x 363, 366 (5th Cir. 2016) (citing *Piotrowski v. City of Hou.*, 237 F.3d 567, 576 (5th Cir. 2001)).

[141] *Wallace v. Kato*, 549 U.S. 384, 387 (2007).

reason to know of the injury which is the basis of the action.'"[142] However, where "a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date."[143] Thus, accrual depends on a proper identification and "pinpointing" of the specific constitutional right at issue.[144] "Assuming no bright line accrual rule applies to the articulated right at issue, courts consider which common-law claim the plaintiff's § 1983 claim most closely resembles, all the while maintaining fidelity 'to the values and purposes of the constitutional right at issue.'"[145]

The Fifth Circuit's opinion in *Garcia v. San Antonio, Texas,*[146] is directly on point. There, the plaintiff, Roberto Garcia, was arrested without a warrant on July 17, 2014.[147] The morning after his arrest, Garcia was brought before a magistrate judge and bond was set at $75,000, which Garcia could not afford.[148] On December 4, 2015, the charges against Garcia were dismissed.[149] On November 21, 2016, Garcia filed a federal lawsuit against the City of San Antonio, the San Antonio Police Department, and several individual officers.[150] The district court dismissed the claims as time barred, and Garcia appealed.[151]

---

[142] *Watts*, 720 F.2d at 1423 (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir.1980)).

[143] *McDonough v. Smith*, 588 U.S. 109, 115 (2019).

[144] *Parria v. Cvitanovich, et al.*, No. 23-3663, 2025 WL 2756678, at *5 (E.D. La. Sept. 29, 2025) (citing *McDonough*, 588 U.S. at 115).

[145] *Id.* (citing *Manual v. City of Joliet*, 580 U.S. 357, 370 (2017)).

[146] *Garcia v. San Antonio, Texas*, 784 Fed. App'x 229 (5th Cir. 2019).

[147] *Id.* at 230–31.

[148] *Id.* at 231.

[149] *Id.*

[150] *Id.*

[151] *Id.*

The Fifth Circuit affirmed the district court opinion in part and vacated it in part.[152] The Fifth Circuit held that the district court correctly determined that Garcia's claim for false arrest without probable cause was time barred.[153] The appellate court reasoned that "[a] detention instituted in the absence of legal process is akin to the tort of false arrest and *accrues upon arrest*."[154] The Fifth Circuit reasoned that Garcia's warrantless arrest the night before took place without legal process.[155] Consequently, the Fifth Circuit held that the claim for false arrest accrued when he was arrested and, therefore, was time barred.[156]

In this case, the police report shows that Plaintiff was arrested without a warrant on the evening of May 1, 2024.[157] Under *Garcia*, Plaintiff's claim for false arrest accrued when she was arrested. Plaintiff had one year from the date of her arrest to file her claims. The Complaint was filed on May 2, 2025, a year and a day later. Therefore, the claim for false arrest without probable cause is time barred.

Like in *Garcia*, Plaintiff is also claiming she was unlawfully detained after legal process commenced. The Fifth Circuit held that Garcia's claim that he was unlawfully detained for sixteen months after legal process commenced was timely.[158] The Fourth Amendment protects against pretrial detention instituted pursuant to wrongful legal process.[159] "Legal process commences

---

[152] *Id.* at 233.

[153] *Id.* at 231.

[154] *Id.* at 232 (citing *Mapes v. Bishop*, 541 F.3d 582, 583–84 (5th Cir. 2008) (emphasis added)).

[155] *Id.*

[156] *Id.*

[157] Rec. Doc. 22-1 at 16.

[158] *Garcia*, 784 Fed. App'x at 232.

[159] *Id.*

when 'a judge (or grand jury) first makes a reliable finding of probable cause.'"[160] "In Garcia's case, a judge first made a probable cause finding when Garcia appeared in court the morning after his arrest. This is the point at which legal process commenced."[161] Legal process "goes wrong" when a probable cause determination is baseless, such as when "a judge's probable-cause determination is predicated solely on a police officer's false statements."[162] The Fifth Circuit determined that "claims for detention pursuant to the 'wrongful institution of legal process' are more akin to malicious prosecution than false arrest, so such claims accrue when criminal proceedings end in a plaintiff's favor."[163]

In this case, it appears Plaintiff is also claiming that she was unlawfully detained for three days after legal process commenced. When the Complaint was filed Plaintiff did not have access to the police report. The police report shows that an arrest warrant was signed at 5:17 AM on May 2, 2025.[164] The arrest warrant was signed by Commissioner Dan Foil, and it finds that Plaintiff was "lawfully arrested upon probable cause, without a warrant."[165] Legal process commenced when the Commissioner made this finding of probable cause. Under *Garcia*, a claim for detention pursuant to the wrongful institution of legal process is more akin to malicious prosecution than false arrest, so such claims accrue when criminal proceedings end in Plaintiff's favor.[166] It appears from the Complaint that the criminal proceedings remain pending against Plaintiff. Therefore,

---

[160] *Id.* (quoting *Manuel v. City of Joliet*, 580 U.S. 357, 365 (2017)).

[161] *Id.*

[162] *Id.*

[163] *Id.* (quoting *Winfrey v. Rogers*, 901 F.3d 483, 493 (5th Cir. 2018)).

[164] *Id.* at 26–28.

[165] *Id.* at 28.

[166] *Garcia*, 784 Fed. App'x at 232.

while it is possible that such a claim is premature, Defendants' argument that the claim is time barred appears to be unavailing.[167] Nevertheless, considering that the Complaint was filed before Plaintiff had a copy of the police report, the Court grants Plaintiff leave to file an Amended Complaint to clarify this claim.

Regarding Plaintiff's Section 1985 claims, the alleged conspiracy of the Officers to assault and batter Plaintiff appears to be untimely, while the alleged conspiracy to cover up the facts of Plaintiff's arrest appears to be timely. The Fifth Circuit stated the following regarding Section 1985 claims, "[a]lthough state law controls which limitations period applies, federal law determines when a cause of action accrues."[168] Therefore, the Louisiana one-year prescriptive period applies to the Section 1985 claims. The statute of limitations for a civil rights violation claim accrues when "the plaintiff knows or should have known [her] civil rights had been violated."[169] From the Complaint the Court gleans that Plaintiff's last interaction with the Officers was on that date of arrest. Absent any information to contradict that inference, the claim for conspiracy to commit assault and battery appears to be time barred. However, the alleged conspiracy to cover up the facts of Plaintiff's arrest presumably occurred at a minimum the day after the arrest. Therefore, Plaintiff's Section 1985 claim asserting a conspiracy to cover up the facts of her arrest appears to be timely. Relatedly, the Section 1986 claims have a one-year statute of limitations from when they begin to accrue.[170] Following the same accrual periods for the

---

[167] *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018) ("A malicious-prosecution claim is based upon detention accompanied ... by wrongful institution of legal process. It does not accrue until the prosecution ends in the plaintiff's favor.") (internal citations omitted).

[168] *Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987).

[169] *Auman v. Kansas*, No. 17-2069, 2018 WL 587232, at *5 (D. Kan. Jan. 2018); *See Id.* at 335 (distinguishing when the statute of limitations begins to run for a federal criminal conspiracy charge compared to a 1985 conspiracy claim).

[170] 42 U.S.C. § 1986.

Section 1985 claims, the Court finds the Plaintiff's Section 1986 claim for the assault and battery conspiracy appear to be untimely and the Section 1986 claim for the conspiracy to cover up the facts of the arrest is timely.

It is unclear from the Complaint precisely when Plaintiff is alleging that the assault and battery occurred. In opposition to the instant motion, Plaintiff suggests that she was subject to excessive force, assault, and battery during her detention at Washington Parish Jail.[171] However, there are no factual allegations regarding these alleged incidents in the Complaint. Therefore, the Court grants Plaintiff leave to file an Amended Complaint to clarify this issue.

**D.    *Monell Claims***

Regarding Plaintiff's Section 1983 *Monell* claims, Defendants argue that the Complaint only contains conclusory allegations of Chief Brown's deliberate indifference and that there is no reference to a specific policy by the Town of Franklinton that caused the alleged constitutional violations. The Court agrees with Defendants' argument.

A *Monell* claim alleging a failure to train or supervise requires Plaintiff to show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[172] "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation."[173] Here, Plaintiff has alleged over nine interactions with FPD that supposedly demonstrate the required pattern of

---

[171] Rec. Doc. 16 at 6.

[172] *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citations omitted).

[173] *Id.* (citing *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (citations omitted).

violations. Further, Plaintiff has plead that Chief Brown, as the supervisor, failed to train the subordinate Officers and that this failure caused Plaintiff's injuries. However, Plaintiff has not plead the specific facts surrounding her previous interactions with FPD or Chief Brown's personal involvement amounting to the deliberate indifference. Thus, none of the three prongs of a *Monell* claim against Chief Brown have been sufficiently plead.

Regarding Plaintiff's *Monell* claim against the Town of Franklinton "the plaintiff must allege that the custom or policy served as the moving force behind the [constitutional] violation at issue, or that her injuries resulted from the execution of the official policy or custom[.]"[174] Further, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."[175] Here, Plaintiff merely alleges "these officers were acting under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Louisiana, specifically the Franklinton Police Department[.]"[176]

Further, Defendants claim that they cannot be liable for constitutional violations that occurred at Washington Parish Jail. Although it is unclear from the pleadings, Washington Parish apparently houses pre-trial detainees for the Town of Franklinton, presumably as a contractor or agent. Hence, the Court is not persuaded that Defendants may escape liability solely because they do not directly operate the jail.[177] However, Plaintiff has not specifically plead a policy or custom of the Town of Franklinton that resulted in her constitutional violations either during arrest or pre-

---

[174] *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (internal quotations omitted).

[175] *Id.*

[176] Rec. Doc. 1 at 5.

[177] *Cf. Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) ("private prison-management companies and their employees are subject to § 1983 liability because they are performing a government function traditionally reserved to the state.")

trial detention. Therefore, Plaintiff has failed to plead facts to establish a *Monell* claim for which relief can be granted against the Town of Franklinton. Nonetheless, the Court exercises its discretion to afford Plaintiff an additional opportunity to replead these claims.

### E.    *Qualified Immunity*

Defendants also argue that Chief Brown and the Officers are entitled to qualified immunity for any claims against them in their individual capacities. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[178] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[179] In this manner, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[180] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[181]

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity.[182] Part one asks the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[183] Part two inquires whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was

---

[178] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[179] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

[180] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[181] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[182] 533 U.S. 194 (2001).

[183] *Id.* at 201.

unlawful in the situation he confronted."[184] The Court does not have to address these two questions sequentially; it can proceed with either inquiry first.[185]

Commencing with the second prong of the *Saucier* framework, the Court must determine whether Plaintiff has alleged a violation of a clearly established constitutional right. When deciding whether the right allegedly violated was "clearly established," the Court asks whether the law so clearly and unambiguously prohibited the conduct such that a reasonable official would understand that what he was doing violated the law.[186] "Answering in the affirmative requires the court to be able to point to controlling authority—or a robust consensus of persuasive authority— that defines the contours of the right in question with a high degree of particularity. This requirement establishes a high bar."[187] When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity.[188] Plaintiff has not sufficiently responded to Defendants' qualified immunity defenses or cited any authority to meet the second prong to show Defendants' conduct was objectively unreasonable in light of clearly established law. The individual officers have not been named in this matter, and there is not sufficient information in the Complaint regarding their conduct for the Court to analyze whether their conduct violated clearly established law.

---

[184] *Id.* at 202.

[185] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014).

[186] *May v. Strain*, 55 F.Supp.3d 885, 897 (E.D. La. 2014) (Brown, J.) (citing *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2014)).

[187] *Id.*

[188] *Id.*

The Fifth Circuit in *Schultea v. Wood* explained that once a defendant asserts qualified immunity, a district court may order the plaintiff to submit a reply pursuant to Federal Rule of Civil Procedure 7(a)(7) after evaluating the complaint under the ordinary pleading standard.[189] Pursuant to *Schultea*, this reply "must be tailored to the assertion of qualified immunity and fairly engage its allegations."[190] Accordingly, considering this precedent, the Court denies Defendants' motion to the extent they seek dismissal of Plaintiff's claims against Chief Brown and the Officers in their individual capacity and grants Plaintiff leave to amend the complaint to allege the Section 1983 claims are not time barred and allege facts "tailored to the assertion of qualified immunity."[191]

## F.    *Punitive Damages Claims*

Finally, Defendants argue that the Town of Franklinton as well as Chief Brown and the Officers in their official capacities are immune from punitive damages. In *City of Newport v. Fact Concerts, Inc.*, the United States Supreme Court held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983."[192] Further, this immunity extends to public servants in their official capacity because they are an extension of the government entity that they represent.[193] However, public servants acting in their individual capacity may be liable for punitive damages.[194] Therefore, this Court dismisses Plaintiff's claims for punitive damages against the Town of Franklinton and Chief Brown and the Officers, but only in their official capacities.

Defendants also claim that punitive damages are not appropriate for Plaintiff's state law

---

[189] *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995).

[190] *Id.* at 1433.

[191] *Id.*

[192] 453 U.S. 247, 271 (1981).

[193] *See Kentucky*, 473 U.S. at 169.

[194] *See Smith v. Wade*, 461 U.S. 30, 35 (1983).

claims because under Louisiana state law punitive damages are not allowed in civil cases unless specifically provided for by statute. "In Louisiana, there is a general public policy against punitive damages; thus, a fundamental tenet of our law is that punitive or other penalty damages are not allowable unless expressly authorized by statute."[195] Plaintiff has not plead, which if any, state law claims would permit punitive damages. She also does not respond to this argument in her opposition brief. Therefore, the Court dismisses any request for punitive damages under Louisiana state law.

### V. Conclusion

Regarding Plaintiff's Fifth, Eighth, and Ninth Amendment claims the Court finds that Plaintiff has not stated a claim for which relief can be granted, and accordingly dismisses these claims with prejudice. Plaintiff has also not stated a claim for punitive damages under Louisiana state law or under federal law against the Town of Franklinton, and Justin Brown and the fictitiously named officers in their official capacities. With respect to the other arguments raised in the instant motion, the Court grants Plaintiff leave to file an Amended Complaint to attempt to cure the deficiencies noted herein and a Rule 7(a)(7) reply tailored to the qualified immunity defense. Accordingly,

**IT IS HEREBY ORDERED** that Defendants the Town of Franklinton and Justin Brown's Rule 12(b)(6) Motions to Dismiss[196] are **GRANTED IN PART** and **DENIED IN PART**. The motions are **GRANTED** to the extent they seek dismissal of the Fifth, Eighth, and Ninth Amendment Claims; the request for punitive damages under federal law against Chief Brown and the Officers in their official capacities, and the Town of Franklinton; and the request for punitive

---

[195] *Ross v. Conoco, Inc.*, 2002-0299, p. 14 (La. 10/15/02), 828 So. 2d 546, 555.

[196] Rec. Docs. 11, 12.

damages against all defendants under Louisiana state law. The motion is **DENIED** in all other respects.

      **IT IS FURTHER ORDERED** that the Fifth, Eighth, and Ninth Amendment claims against Chief Brown and the Officers in their individual and official capacities, and the Town of Franklinton are **DISMISSED WITH PREJUDICE**.

      **IT IS FURTHER ORDERED** that the requests for punitive damages under federal law against the Town of Franklinton, and Justin Brown and the fictitiously named officers in their official capacities are **DISMISSED WITH PREJUDICE**.

      **IT IS FURTHER ORDERED** that the requests for punitive damages under Louisiana state law against the Town of Franklinton, Justin Brown and the fictitiously named officers are **DISMISSED WITH PREJUDICE**.

      **IT IS FURTHER ORDERED** that Plaintiff is granted leave to amend the complaint and to file a Rule 7(a)(7) reply within fourteen days of this Order to cure the deficiencies noted, if possible. If upon amendment, Plaintiff fails to provide sufficient factual support for each element of each claim, upon motion by a party, the Court will dismiss the claims

      **NEW ORLEANS, LOUISIANA,** this __28th__ day of October, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**