**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SHELBY ANN ANDERS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-869** |
| **THE TOWN OF FRANKLINTON, et al.** | **SECTION: "G"(5)** |

**ORDER AND REASONS**

Before the Court is a Rule 12(b)(6) Motion to Dismiss filed by Defendants the Town of Franklinton and Justin Brown (collectively, the "Town Defendants").[1] In this litigation, Plaintiff Shelby Ann Anders ("Plaintiff") brings claims against Defendants the Town of Franklinton, the Franklinton Police Department, fictitiously named police officers (collectively, the "Police Officers"), fictitiously named correctional officers (collectively, the "Correctional Officers"), Justin Brown in his individual and official capacity as the Chief of Police of the Franklinton Police Department ("Chief Brown"), and Jason Smith in his individual and official capacity as the Sheriff of Washington Parish ("Sheriff Smith"), for damages related to Plaintiff's arrest by the Franklinton Police Department ("FPD") and subsequent detention at the Washington Parish Jail in May 2024.[2]

The Town Defendants move the Court to dismiss Plaintiff's claims as time barred, based on qualified immunity, and for failure to state a claim upon which relief can be granted.[3] Plaintiff opposes the motion.[4] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies the motion in part.

---

[1] Rec. Doc. 35.

[2] Rec. Doc. 30.

[3] Rec. Doc. 35.

[4] Rec. Doc. 36.

## I. Background

### *A. Factual Background*

According to the Complaint, on May 1, 2024, Plaintiff was in Franklinton, Louisiana, receiving an estimate to get a fence repaired.[5] Plaintiff claims she parked her truck to inspect the fence, when "two Caucasian women proceeded to park their vehicle behind her truck."[6] Plaintiff contends she repeatedly asked the two women to move their vehicle to allow her to leave in her truck.[7] Plaintiff submits that the two women refused to move their vehicle and told her that they were "going to say she tried to hit" them.[8] Plaintiff asserts that Franklinton Police Officers then arrived on the scene and began investigating by getting statements from the two women.[9] Plaintiff alleges that the police officers refused to take her statement and only questioned her about "whether or not she had video or audio footage of the incident."[10] When Plaintiff confirmed that she did not have any footage of the incident, she was allegedly immediately handcuffed and placed in the police car.[11] Plaintiff alleges that the police officers "used unnecessary and excessive physical force, grabbing Plaintiff by the arm, twisting her wrist, and forcefully pushing her against a vehicle, causing physical pain and injury."[12]

---

[5] Rec. Doc. 30 at 5.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at 6.

[12] *Id.*

Plaintiff was subsequently arrested and charged with Attempted Murder and Obstruction.[13] The next day, on May 2, 2025, Commissioner Dan Foil of the 22nd Judicial District Court for the Parish of Washington signed an arrest warrant finding probable cause for Plaintiff's arrest.[14] Plaintiff contends that she was unlawfully detained and arrested without probable cause.[15] Plaintiff alleges that the police officers "failed to investigate, take relevant statements from Mr. or Mrs. Anders (who were both present on the scene), or assess for any other bystanders or witnesses."[16] Plaintiff also claims that, during and after the arrest, the police officers repeated false verbal and written statements accusing Plaintiff of criminal conduct, which were disseminated to other officers and the community.[17]

Following the arrest, Plaintiff asserts that she was detained at the Washington Parish Jail for three nights and subjected to "unsafe and unsanitary conditions" during that time.[18] Plaintiff contends that she "continues to suffer from post-traumatic stress and strain, chronic anxiety and headaches for which [she] has incurred expenses."[19] Plaintiff avers that these damages were caused by the actions of the Police Officers and the Correctional Officers.[20] Plaintiff asserts that the officers "conspired to conceal the unlawful arrest by falsifying and hindering access to reports,

---

[13] *Id.*

[14] Rec. Doc. 22-1.

[15] Rec. Doc. 30 at 6.

[16] *Id.*

[17] *Id.* at 7.

[18] *Id.*

[19] *Id.* at 8.

[20] *Id.*

omitting facts, and coordinating statements to protect each other from discipline and liability."[21] Plaintiff alleges that these officers were acting under the color of law and were under the direct command of Chief Brown or Sheriff Smith.[22]

Plaintiff contends that under Louisiana Civil Code article 2315, the municipal Defendants are liable for the tortious conduct of the officers committed within the course and scope of their employment.[23] Plaintiff also asserts that the conduct of the individual Defendants was undertaken pursuant to the "policies and customs of the municipal Defendant, making the municipality jointly liable under *Monell*."[24] Specifically, Plaintiff alleges that Defendants "have engaged in a pattern and practice of unconstitutional behaviors, stops, and arrests based on race."[25] Plaintiff also claims to have been arrested by FPD on September 4, 2020, and alleges that she has encountered similar behavior from FPD during prior interactions on ten other occasions spanning from 2018 to 2023.[26]

***B. Procedural Background***

On May 2, 2025, Plaintiff filed a Complaint against the Town Defendants in this Court.[27] On July 30, 2025, the Town Defendants filed a Motion to Dismiss for Failure to State a Claim[28] and a Motion to Dismiss Punitive or Exemplary Damage Claims.[29] On October 29, 2025, the Court

[21] *Id.* at 9.

[22] *Id.* at 8–9.

[23] *Id.* at 12.

[24] *Id.* at 11.

[25] *Id.* at 20.

[26] *Id.* at 21.

[27] Rec. Doc. 1.

[28] Rec. Doc. 11.

[29] Rec. Doc. 12.

dismissed Plaintiff's Fifth, Eighth, and Ninth Amendment claims, and her requests for punitive damages under federal and Louisiana state law with prejudice.[30] In that same Order, the Court granted Plaintiff leave to file an amended complaint to cure the additional pleading deficiencies noted therein, and leave to file a Rule 7(a)(7) reply tailored to the qualified immunity defense.[31]

On November 11, 2025, Plaintiff filed an Amended Complaint.[32] The Amended Complaint added Sheriff Smith and the fictitiously named correctional officers as defendants. Plaintiff brings claims under Louisiana law for defamation, slander, assault, battery, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.[33] Plaintiff also brings claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988.[34] On November 25, 2025, Plaintiff filed a Rule 7(a)(7) Reply to Defendants' Qualified Immunity Assertion.[35]

The Town Defendants filed the instant Motion to Dismiss on December 5, 2025.[36] Plaintiff filed a response in opposition to the motion on January 21, 2026.[37] The Town Defendants filed a reply in further support of the motion on February 3, 2026.[38]

---

[30] Rec. Doc. 29.

[31] *Id.*

[32] Rec. Doc. 30.

[33] *Id.*

[34] *Id.*

[35] Rec. Doc. 32.

[36] Rec. Doc. 35.

[37] Rec. Doc. 36. Plaintiff's opposition to the Motion to Dismiss was filed 8 days past the January 13, 2026, deadline, without leave of the Court.

[38] Rec. Doc. 41.

## II. Parties' Arguments

### *A. The Town Defendants' Arguments in Support of the Motion to Dismiss*

The Town Defendants move the Court to dismiss Plaintiff's claims, asserting that they are prescribed and/or that the Amended Complaint fails to state a claim upon which relief may be granted.[39] Alternatively, the Town Defendants move the Court to order Plaintiff to provide a more definite statement as to the Section 1985 conspiracy claim.[40]

First, the Town Defendants assert that Plaintiff's claims are prescribed.[41] The Town Defendants point out that the prescriptive periods for false arrest and false imprisonment claims begin to accrue on the date of arrest.[42] The Town Defendants assert that the Complaint was filed one day late because Plaintiff was arrested on May 1, 2024, and the Complaint was not filed until May 2, 2025.[43] The Town Defendants contend that Plaintiff's explanation for the late filing—that she requested that a copy of the police report from Defendants on at least three occasions—is not sufficient to justify the application of the doctrine of *contra non valentem*.[44]

The Town Defendants assert there were multiple avenues available to Plaintiff to obtain a copy of the police report.[45] The Town Defendants assert that the State provided open file discovery in the criminal proceedings related to Plaintiff's arrest, and Plaintiff or her attorney could have

---

[39] Rec. Doc. 35-1 at 1.

[40] *Id.* at 12.

[41] *Id.* at 4.

[42] *Id.* (citing Rec. Doc. 29).

[43] *Id.*

[44] *Id.* at 4–5 (citing Rec. Doc. 30).

[45] *Id.* at 5.

requested a copy of the report from the prosecutor.[46] Alternatively, the Town Defendants suggest that Plaintiff or her attorney could have obtained a copy of the police report by paying for it at the police station or submitting a Freedom of Information Act request.[47] Thus, the Town Defendants contend that the doctrine of *contra non valentem* is inapplicable here, and all claims that accrued on May 1, 2024 are prescribed.[48] For this same reason, the Town Defendants argue that the federal claims associated with the alleged false arrest or excessive force (to the extent that it occurred on May 1, 2024) are prescribed.[49]

Second, the Town Defendants assert that Plaintiff fails to state a claim under *Monell* to support the finding of municipal liability.[50] The Town Defendants aver that the Amended Complaint lodges conclusory allegations that the Town of Franklinton and FPD had policies that violated her rights, but Plaintiff fails to point to any particular policy in support of these assertions.[51] The Town Defendants then review the 10 dates upon which Plaintiff alleges that she "personally encountered the same or similar behavior from this agency during prior interactions with the FPD."[52] The Town Defendants present an affidavit of Major Randall Penton of the FPD to dispute Plaintiffs assertion that there was any improper police behavior during the 10 listed dates.[53]

---

[46] *Id.*

[47] *Id.* at 6.

[48] *Id.*

[49] *Id.* at 7.

[50] *Id.* at 8.

[51] *Id.*

[52] *Id.* at 9.

[53] *Id.* (citing Rec. Doc. 35-6).

Third, the Town Defendants assert that Chief Brown and the Police Officers are entitled to qualified immunity.[54] As to Chief Brown, the Town Defendants contend that "[h]e was not present at the arrest, there is no allegation that he was present and there is no allegation that he directly ordered the Officers to arrest plaintiff."[55] The Town Defendants submit that Chief Brown's role in relation to Plaintiff's arrest is limited his supervisory capacity as Chief of Police, and *respondeat superior* liability does not exist in Section 1983 cases.[56] As to the Police Officers, the Town Defendants assert that the Police Officers are insulated from liability for any false arrest claim because Commissioner Foil, an independent intermediary, found probable cause existed for the arrest.[57] Turning to the excessive force claims against the Police Officers, the Town Defendants aver that Plaintiff makes no allegations about how her wrists were hurt or to what extent, and restricting a detainee's ability to move freely is a necessary component of any lawful arrest.[58] Thus, the Town Defendants contend that the Police Officers' actions could not be considered objectively unreasonable.[59]

Fourth, the Town Defendants assert that the Amended Complaint fails to allege who was involved in the conspiracy, and how, where, or when the conspiracy took place.[60] Thus, to the

---

[54] *Id.* at 10.

[55] *Id.*

[56] *Id.*

[57] *Id.* at 10–11.

[58] *Id.* at 11.

[59] *Id.*

[60] *Id.* at 12.

extent the Court does not dismiss these claims the Town Defendants move for a more definite statement pursuant to Rule 12(e).[61]

Finally, as to the claims of police negligence, negligent hiring and supervision, and intentional infliction of emotional distress, the Town Defendants contend that these claims are either prescribed, as they relate to the arrest and alleged excessive force, or "subject to dismissal under the independent intermediary doctrine based on the Commissioner's finding of probable cause."[62] The Town Defendants assert that the Court already held that the Complaint did not contain sufficient factual allegations to support the negligence, defamation, slander or negligent and intentional infliction of emotional distress claims, and the Town Defendants argue that the Amended Complaint does not cure this deficiency.[63]

***B. Plaintiff's Arguments in Opposition to the Motion to Dismiss***

In opposition to the Motion to Dismiss, Plaintiff asserts that her claims are not prescribed, and that she thoroughly states claims upon which relief can be granted.[64] First, Plaintiff contends that *contra non valentem* is directly applicable to her claims.[65] Plaintiff avers that the Town Defendants' argument regarding Plaintiff's request for the police report from the May 1, 2024 arrest is "a merits argument that depends on facts not properly resolved at this stage as it improperly shifts the burden to Plaintiff to prove diligence with evidence prior to discovery, despite Plaintiff plausibly alleging impediments to access and identification."[66] Plaintiff points to

---

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] Rec. Doc. 36.

[65] *Id.* at 3.

[66] *Id.*

the allegation in the Amended Complaint "that Plaintiff sought access to identifying and obtaining incident information (including the police report only transmitted to Plaintiff during the course of litigation) and was deprived of a fair opportunity to timely identify the responsible offices and vindicate her rights."[67] Plaintiff contends that she is not required to attach documentary proof of her requests to obtain the incident information, and that the Court must accept her allegations as true and draw all reasonable inferences in her favor.[68] As to the Section 1983 claims, Plaintiff asserts that the Court already recognized in a prior Order that "certain Fourth Amendment legal-process detention theories may be timely based on adjudication of the charges, continual harm, and accrual dates consistent with *contra non valentem*."[69] Thus, Plaintiff argues that the Court should not hold that the Section 1983 claims are prescribed at the motion to dismiss stage.[70]

Second, Plaintiff asserts that she has pled sufficient facts to overcome the individual Defendants' qualified immunity defense as to the claims of excessive force and unlawful seizure/legal process.[71] Plaintiff contends that it is clearly established that officers may not use objectively unreasonable force, including the unreasonable application of handcuffs, and that because Plaintiff alleges injuries to her wrists and unconstitutional handling during her arrest, she should be permitted to explore this factual dispute through discovery.[72] Regarding the unlawful seizure/legal process claim, Plaintiff submits that she has plausibly alleged a lack of probable cause

---

[67] *Id.* at 4.

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.* at 6–7.

[72] *Id.* at 6.

and wrongful detainment.[73] Further, Plaintiff argues that Commissioner Foil's finding of probable cause the day after her arrest "is not a blanket shield for tortfeasors, especially where Plaintiff alleges the chain was tainted and where Defendants' facts depend on materials outside of the pleadings."[74]

Concerning the supervisor liability claim against Chief Brown, Plaintiff asserts that the "official capacity claims against Chief Brown are sufficiently pled to survive a motion to dismiss."[75] Plaintiff submits that the Amended Complaint offers numerous sufficient theories of municipal liability including: "failures in training/supervision/discipline, misconduct occurring in public view, the involvement of multiple officials in the misconduct, and the maintenance of unconstitutional practices by the government agency that caused the violations."[76] Thus, Plaintiff argues that she has plausibly plead *Monell* liability, and that the Town Defendants are improperly attempting to litigate facts via Major Penton's affidavit.[77]

Finally, Plaintiff asserts that the state law claims have been sufficiently pled.[78] Plaintiff does not oppose to the dismissal of the conspiracy claim, but contends that whether the remaining state law claims are prescribed or resolved by the independent intermediary doctrine, are fact intensive questions that cannot be resolved on the pleadings.[79] To the extent that the Court holds

---

[73] *Id.*

[74] *Id.*

[75] *Id.* at 6–7.

[76] *Id.* at 7.

[77] *Id.* at 8.

[78] *Id.* at 9.

[79] *Id.*

that Plaintiff has not adequately plead the claims against Defendants, Plaintiff requests that the Court grant leave for Plaintiff to further amend the Amended Complaint.[80]

### *C. The Town Defendants' Arguments in Further Support of the Motion to Dismiss*

In reply, the Town Defendants begin by reasserting that *contra non valentem* is inapplicable and the false arrest and excessive force claims are prescribed.[81] The Town Defendants assert that Plaintiff has failed to establish why she was unable to obtain the name of the investigating/arresting officer.[82]

Turning to the independent intermediary doctrine, the Town Defendants contend that when Commissioner Foil executed the arrest warrant finding that Plaintiff "had been lawfully arrested upon probable cause, without a warrant[,]" it broke the chain of causation for Plaintiff's false arrest claim.[83] Further, the Town Defendants aver that at a minimum Plaintiff is required to set forth facts to support a *Franks* claim.[84] The Town Defendants submit that "[n]either the original complaint nor the First Amended Complaint allege facts that Officer DiCarlo supposedly falsified or omitted (recklessly or intentionally) which mislead the Commissioner resulting in the execution of the arrest warrant."[85]

Regarding the documents referenced by the Town Defendants in the motion to dismiss, the Town Defendants assert that those document are either a part of the public record or were

[80] *Id.* at 10.

[81] Rec. Doc. 41.

[82] *Id.* at 3.

[83] *Id.*

[84] *Id.*

[85] *Id.*

referenced by Plaintiff in the Amended Complaint.[86] Therefore, the Town Defendants contend that those documents should be considered by the Court in its ruling, and the Court should dismiss Plaintiff's claims with prejudice.[87]

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[88] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[89] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[90] "Factual allegations must be enough to raise a right to relief above the speculative level."[91] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[92]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[93] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[94] "While legal conclusions

---

[86] *Id.* at 5.

[87] *Id.* at 5–6.

[88] Fed. R. Civ. P. 12(b)(6).

[89] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[90] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[91] *Twombly*, 550 U.S. at 555.

[92] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[93] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[94] *Iqbal*, 556 U.S. at 678–79.

can provide the framework of a complaint, they must be supported by factual allegations."[95] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[96] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[97] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[98] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[99] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[100]

Statute of limitations is an affirmative defense.[101] When a defendant seeks dismissal on statute of limitations grounds, generally the defendant bears the burden of proof to show the claim is time barred.[102] Nevertheless, "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[103] The Fifth Circuit has instructed that a Rule

---

[95] *Id.* at 679.

[96] *Id.* at 678.

[97] *Id.*

[98] *Id.*

[99] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[100] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[101] Fed. R. Civ. P. 8(C)(1).

[102] *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011) (citations omitted).

[103] *Doe 1 v. City View Independent Sch. Dist.*, No. 24-10592, 2025 WL 2537001, at *3 (5th Cir. 2025) (per curiam); *see also Frame*, 657 F.3d at 240 (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

12(b)(6) motion to dismiss on the basis of prescription should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."[104]

## IV. Analysis

As an initial matter, Plaintiff does not oppose dismissal of the conspiracy claims.[105] Therefore, the Court dismisses the conspiracy claims brought against the Town Defendants under 42 U.S.C. § 1985 and Louisiana Civil Code article 2324. The Town Defendants move the Court to dismiss all of Plaintiff's claims as time barred, based on qualified immunity, and for failure to state a claim upon which relief can be granted.[106] Each of the Town Defendants' arguments is addressed in turn.

### *A. Timeliness of State Law Claims*

The Town Defendants contend that Plaintiff's state law claims against them are prescribed, because the original Complaint was filed one year and one day after the claims accrued, and *contra non valentem* does not apply here. Plaintiff counters that her claims are timely under the doctrine of *contra non valentem*.

When presented with a state law claim, "federal courts apply state statutes of limitations and related state law governing tolling of the limitation period."[107] "[U]nder Louisiana jurisprudence, prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished; of two possible constructions, that which favors

---

[104] *Abdul-Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 640 (5th Cir. 1983).

[105] Rec. Doc. 36 at 9, n.1.

[106] Rec. Doc. 35.

[107] *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989).

maintaining, as opposed to barring, an action should be adopted."[108] "However, that does not mean that every prescriptive statute must be interpreted in order to avoid prescription."[109] The party pleading prescription has the burden of proving prescription.[110] If prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed.[111]

Pursuant to the version of Louisiana Civil Code article 3492 that is applicable to this case, "delictual actions are subject to a liberative prescription of one year."[112] "A delictual action is a tort action or an action seeking damages for injury caused by the act of another."[113] All claims arising under Louisiana Civil Code articles 2315 and 2316 are subject to this prescriptive period.[114] Therefore, Plaintiff's state law claims for false arrest, false imprisonment, excessive force, negligence, assault, battery, defamation, slander, and negligent or intentional infliction of emotional distress are subject to this prescriptive period.

Under Louisiana law, there is a "well-settled concept that prescription commences to run

---

[108] *Bustamento v. Tucker*, 607 So. 2d 532, 537 (La. 1992).

[109] *Turner v. Willis Knighton Medical Center*, No. 12-0703 (La. 12/4/12); 108 So. 3d 60, 65.

[110] *Carter v. Haygood*, No. 04-0646 (La. 1/19/05); 892 So. 2d 1261, 1267.

[111] *Id.*

[112] La. Civ. Code art. 3492, repealed by TORT ACTIONS, 2024 La. Sess. Law Serv. Act 423 (H.B. 315). Article 3492 was repealed and replaced by Article 3493.1 effective July 1, 2024. *See id.* The new Article 3493.1 extends the prescriptive period for delictual claims from one year to two. *See* La. Civ. Code art. 3493.1. But Article 3493.1 has "prospective application only," and its two-year prescriptive period "shall apply to delictual actions arising after the [July 1, 2024] effective date of [Act 423]." TORT ACTIONS, 2024 La. Sess. Law Serv. Act 423 (H.B. 315). Because the alleged facts underlying Plaintiff's claims occurred before July 1, 2024, the former Article 3492 and its one-year prescriptive period apply.

[113] *Cosse v. Orihuela*, No. 12-456 (La. App. 5 Cir. 1/30/13); 109 So. 3d 950, 953 (internal quotations omitted) (quoting *Langlois v. Allied Chem. Corp.*, 249 So. 2d 133, 136 (La. 1971)).

[114] *See C.P. v. Roman Cath. Diocese of Lake Charles*, No. 24-01615, 2025 WL 662821, at *1 (W.D. La. Feb. 28, 2025) (stating that claims arising under Louisiana Civil Code articles 2315 and 2316 "would ordinarily be time-barred under Louisiana's one-year prescriptive period", with the exception of a ten-year period for claims arising from child abuse); *Bowie v. Hodge*, No. 20-2441, 2021 WL 53312, at *10 (E.D. La. Jan. 6, 2021) (holding that claims under Louisiana Civil Code articles 2315 and 2316 were prescribed when they occurred more than one year after the complaint was filed).

from the day injury or damage is sustained."[115] As to Plaintiff's claims for defamation and slander, "each and every publication, or communication, of a defamatory statement to a third person constitutes a separate cause of action."[116] Plaintiff alleges that "[d]uring and after the arrest, Defendant officers repeated false verbal and written statements accusing Plaintiff of criminal conduct, which were repeated to other officers and members of the public."[117] Although Plaintiff does not specify the date these allegedly defamatory statements were made, her allegation that the statements were made "after the arrest" allows the Court to infer that these statements may have been made after May 1, 2024. It is not clear from the face of the Amended Complaint that the defamation and slander claims prescribed. Therefore, this issue cannot be resolved on a Rule 12(b)(6) motion to dismiss.

As to Plaintiff's claims for negligent or intentional infliction of emotional distress, Plaintiff alleges that "Defendant officers engaged in extreme and outrageous conduct by wrongfully arresting Plaintiff, using excessive force, publicly humiliating her, and spreading false accusations. Defendant officers' conduct was intended to cause—or recklessly disregarded the likelihood of causing—severe emotional distress."[118] In *Bustamento v. Tucker*, the Louisiana Supreme Court held that a plaintiff's claim for intentional infliction of emotional distress had not prescribed, reasoning that "when the acts or conduct are continuous on an almost daily basis, by the same actor, of the same nature, and the conduct becomes tortious and actionable because of its continuous, cumulative, synergistic nature, then prescription does not commence until the last act

[115] *See Eaglin v. Eunice Police Dep't*, 2017-1875, p. 8 (La. 06/27/18), 319 So. 3d 225, 229.

[116] *Nolan v. Jefferson Par. Hosp. Serv. Dist. No. 2*, 01-175 (La. App. 5 Cir. 6/27/01), 790 So. 2d 725, 730 (quoting *Wiggins v. Creary*, 475 So. 2d 780, 781 (La. App. 1 Cir. 1985), *writ denied*, 478 So. 2d 910 (La. 1985)).

[117] Rec. Doc. 30 at 7.

[118] *Id.* at 16.

occurs or the conduct is abated."[119] Plaintiff alleges that she "was continuously silenced by the Defendants, in an effort to conceal, cover up, or collude against Plaintiff and/or her rights to these claims."[120] Accepting Plaintiff's allegations as true, she has alleged that the tort was of a continuous, cumulative, synergistic nature. It is not clear from the face of the Amended Complaint that the negligent or intentional infliction of emotional distress claims prescribed. Therefore, this issue cannot be resolved on a Rule 12(b)(6) motion to dismiss.

Regarding the alleged excessive force, assault, and battery, the Amended Complaint only alleges that Plaintiff suffered physical injuries to her wrists on May 1, 2024, the date of arrest, "while being transported to and detained at the Washington Parish Jail."[121] Thus, the prescriptive period for excessive force, assault, and battery claims began to run on May 1, 2024, and the claim appears to have prescribed on the face of the Amended Complaint.

Turning to Plaintiff's negligence claim against the Town Defendants, she claims that they owed her a duty of due care, and that duty "was breached in that Defendants' negligence and failure to exercise due care in dealing with the Plaintiff proximately caused her injuries and damages as described herein as Defendants failed to properly observe, maintain, or otherwise protect Plaintiff's safety *while she was in police custody*."[122] Because Plaintiff merely alleges that the Town Defendants' negligence arises from her time in their custody and because Plaintiff states that she was transferred from FPD custody to the Washington Parish Jail on May 1, 2024, the Court finds that the prescriptive period for Plaintiff's negligence claims against the Town

---

[119] *Bustamento v. Tucker*, 92-0523 (La. 10/19/92), 607 So. 2d 532, 542.

[120] Rec. Doc. 30 at 16.

[121] *Id.* at 7.

[122] *Id.* at 16 (emphasis added).

Defendants accrued on May 1, 2024, and the claim appears to have prescribed on the face of the Amended Complaint.

Consistent with this principle, the Louisiana Supreme Court has held that the prescriptive period for false arrest and false imprisonment claims begin to accrue on the date of arrest.[123] Therefore, Plaintiff's state law claims of excessive force, assault, battery, negligence, false arrest, and false imprisonment against the Town Defendants accrued on the date of arrest, May 1, 2024. Because Plaintiff filed the original Complaint more than one year later, on May 2, 2025, the claims of excessive force, assault, battery, negligence, false arrest, and false imprisonment are prescribed on the face of the Amended Complaint.

"The doctrine of *contra non valentem* provides that prescription does not run against one who is ignorant of the *facts* upon which their cause of action is based and applies an exception to the statutory prescriptive period where *in fact and for good cause* a plaintiff is *unable* to exercise his cause of action when it accrues."[124] Plaintiff bears the burden of establishing that the doctrine of *contra non valentem* applies.[125] Plaintiff correctly asserts that at the motion to dismiss stage, she does not bear any burden to provide evidentiary support for her assertion that prescription was tolled due to the application of *contra non valentem*. Nevertheless, the Court must still consider whether Plaintiff's factual allegations, if accepted as true, are sufficient to support the application of *contra non valentem*.[126]

---

[123] *Eaglin*, 319 So. 3d at 230 (holding false arrest and false imprisonment claims are subject to a one-year prescriptive period accruing on the date of arrest).

[124] *Eastin v. Entergy Corp.*, 2003-1030 (La. 2/6/2004), 865 So. 2d 49, 55 (emphasis in original).

[125] *Id.* at 54 ("When an exception of prescription is filed, ordinarily, the burden of proof is on the party pleading prescription. However, if prescription is evident on the face of the pleadings, as it is in the instant case, the burden shifts to the plaintiff to show the action has not prescribed.").

[126] *Ellis v. Evonik Corp.*, 604 F. Supp. 3d 356, 365 (E.D. La. 2022).

The Louisiana Supreme Court has recognized four limited situations where the doctrine applies to prevent the running of prescription:

> 1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> 2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the [plaintiff] from suing or acting;
>
> 3. Where the [defendant] himself has done some act effectually to prevent the [plaintiff] from availing himself of his cause of action; and
>
> 4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.[127]

The only arguments raised by Plaintiff regarding the application of *contra non valentem* concern the third and fourth categories. The third category of *contra non valentem* "encompass[es] situations where an innocent plaintiff has been lulled into a course of inaction in the enforcement of [her] right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of [her] rights."[128] In other words, the third category applies where the defendant engages in conduct which prevents the plaintiff from availing herself of her judicial remedies.[129]

Plaintiff alleges that she was unable to bring suit within the prescriptive period because she requested a copy of the police report multiple times, but Defendants never gave her a copy of the report. Plaintiff asserts that she was "deprived of a fair opportunity to timely identify the responsible [officers] and vindicate her rights."[130] However, when Plaintiff filed the original Complaint on May 2, 2025, she identified the Police Officers as "Officer John Doe 1" and "Officer

---

[127] *Wimberly v. Gatch*, 9-C-2361 (La. 4/11/1994), 635 So. 2d 206, 211.

[128] *Carter v. Haygood*, 2004-0646 (La. 1/19/2005), 892 So. 2d 1261, 1269.

[129] *Id.*

[130] Rec. Doc. 36 at 4.

John Doe 2."[131] Therefore, obtaining the identity of the "responsible" officers was never a barrier to Plaintiff filing suit. Accepting Plaintiff's allegations as true, she has not met her burden to show that third category of *contra non valentem* applies.

Plaintiff also avers that "she could not have reasonably discovered the wrongful nature of her arrest, detention, and related misconduct until police reports were obtained and viewed, revealing false statements . . . ."[132] This argument appears to invoke the fourth category of the of *contra non valentem*, which is commonly referred to as the "discovery rule."[133] The discovery rule provides that prescription does not begin until the date the plaintiff discovers or should have discovered the facts upon which her cause of action is based.[134] "This standard is exceedingly stringent and should be applied only in exceptional circumstances."[135]

The original Complaint was filed before Plaintiff received a copy of the police reports, but it raises essentially the same claims as those alleged in the Amended Complaint, which was filed after the Town Defendants filed the police reports into the record. While Plaintiff's claims are plead with greater specificity in the Amended Complaint, they are substantively the same as the claims that were asserted in the original Complaint. Plaintiff has not explained how she was able to ascertain that she had those causes of action against the Town Defendants at the time the original Complaint was filed and reconcile that with her position that she discovered these causes of action for the first time after obtaining the police reports. Therefore, Plaintiff has not demonstrated that the discovery rule applies to this case.

---

[131] Rec. Doc. 1 at 3.

[132] Rec. Doc. 30 at 9–10.

[133] *Doe v. Doe*, 95-0006 (La. App. 1 Cir. 10/6/95), 671 So. 2d 466, 470.

[134] *Id.*

[135] *Eastin*, 865 So. 2d at 55.

Plaintiff's state law claims of excessive force, assault, battery, negligence, false arrest, and false imprisonment against the Town Defendants accrued on May 1, 2024. The prescriptive period for these claims ran through May 1, 2025, making the May 2, 2025 filing untimely. Further, Plaintiff has not provided any facts, which even if accepted as true, would support her argument that the prescriptive period was tolled due to the doctrine of *contra non valentem*. Thus, the Court holds that the excessive force, assault, battery, negligence, false arrest, and false imprisonment claims are prescribed and dismisses them with prejudice. However, accepting the allegations in the Amended Complaint as true, the claims for defamation, slander, and negligent or intentional infliction of emotional distress may have accrued after May 1, 2024. Because it is not clear from the face of the Amended Complaint that the defamation, slander, and negligent or intentional infliction of emotional distress claims prescribed, this issue cannot be resolved on a Rule 12(b)(6) motion to dismiss.

### *B. Timeliness of Federal Claims*

"Section 1983 does not prescribe a statute of limitations. Instead, '[t]he statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state.'"[136] Thus, Louisiana Civil Code article 3492's one year statute of limitation applies here. "In applying the forum state's statute of limitations, the federal court should also give effect to any applicable tolling provisions," such as *contra non valentum*.[137] However, "the accrual date of a § 1983 cause of action is a question of federal law

[136] *Heilman v. City of Beaumont*, 638 Fed. App'x 363, 366 (5th Cir. 2016) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)). Considering that Plaintiff does not contest dismissal of the conspiracy claims, her only remaining federal claims are the Section 1983 and 1988 claims. Section 1988 allows a "prevailing party" in a Section 1983 action to recover attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Thus, the Section 1988 claim is not an independent cause of action, and its timeliness is directly tied to the timeliness of the Section 1983 claim.

[137] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016) (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993)).

that is not resolved by reference to state law."[138] "A section 1983 action accrues, and the statute of limitations begins to run when the 'plaintiff knows or has reason to know of the injury which is the basis of the action.'"[139] Where "a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date."[140] Thus, accrual depends on a proper identification and "pinpointing" of the specific constitutional right at issue.[141] "Assuming no bright line accrual rule applies to the articulated right at issue, courts consider which common-law claim the plaintiff's § 1983 claim most closely resembles, all the while maintaining fidelity 'to the values and purposes of the constitutional right at issue.'"[142]

Plaintiff brings conditions of confinement, excessive force, false arrest, and false imprisonment claims under Section 1983. Looking first to the conditions of confinement claim, Plaintiff alleges that she "endured irreparable harm at *both jail facilities*, to include: being forced to sleep on the floor and being stripped naked."[143] Accepting Plaintiff's allegations are true, she must have been aware that she was forced to sleep on the floor and was forced to strip naked at the FPD jail on May 1, 2024.[144] Turning to the excessive force claim, Plaintiff became aware of this claim on the date of arrest when her wrists were allegedly injured by being placed in handcuffs. Therefore, the conditions of confinement and excessive force claims against the Town Defendants

---

[138] *Wallace v. Kato*, 549 U.S. 384, 387 (2007).

[139] *Watts v. Graves*, 720 F.2d 1416, 1423 (5th Cir. 1983) (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980)).

[140] *McDonough v. Smith*, 588 U.S. 109, 115 (2019).

[141] *Parria v. Cvitanovich, et al.*, No. 23-3663, 2025 WL 2756678, at *5 (E.D. La. Sept. 29, 2025) (citing *McDonough*, 588 U.S. at 115).

[142] *Id.* (citing *Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017)).

[143] Rec. Doc. 30 at 14 (emphasis added).

[144] Plaintiff does not dispute that she was transferred to the Washington Parish Jail that same night.

accrued on May 1, 2024, and were prescribed by May 2, 2025, when the original Complaint was filed. Moreover, for the same reasons discussed above, Plaintiff has not met her burden of demonstrating that *contra non valentem* applies.

As to the false arrest and false imprisonment claims, the Fifth Circuit's opinion in *Garcia v. San Antonio, Texas,*[145] is directly on point. There, the plaintiff, Roberto Garcia, was arrested without a warrant on July 17, 2014.[146] The morning after his arrest, Garcia was brought before a magistrate judge and bond was set at $75,000, which Garcia could not afford.[147] On December 4, 2015, the charges against Garcia were dismissed.[148] On November 21, 2016, Garcia filed a federal lawsuit against the City of San Antonio, the San Antonio Police Department, and several individual officers.[149] The district court dismissed the claims as time barred, and Garcia appealed.[150]

The Fifth Circuit affirmed the district court opinion in part and vacated it in part.[151] The Fifth Circuit held that the district court correctly determined that Garcia's claim for false arrest without probable cause was time barred.[152] The appellate court reasoned that "[a] detention instituted in the absence of legal process is akin to the tort of false arrest and *accrues upon arrest*."[153] The Fifth Circuit reasoned that Garcia's warrantless arrest the night before took place

[145] *Garcia v. San Antonio, Texas*, 784 Fed. App'x 229 (5th Cir. 2019).

[146] *Id.* at 230–31.

[147] *Id.* at 231.

[148] *Id.*

[149] *Id.*

[150] *Id.*

[151] *Id.* at 233.

[152] *Id.* at 231.

[153] *Id.* at 232 (citing *Mapes v. Bishop*, 541 F.3d 582, 583–84 (5th Cir. 2008) (emphasis added)).

without legal process.[154] Consequently, the Fifth Circuit held that the claim for false arrest accrued when he was arrested and, therefore, was time barred.[155]

In this case, the incident report shows that Plaintiff was arrested without a warrant on the evening of May 1, 2024.[156] Under *Garcia*, Plaintiff's claim for false arrest accrued when she was arrested. Plaintiff had one year from the date of her arrest to file her claims. The Complaint was filed on May 2, 2025, a year and a day later. Therefore, the claim for false arrest without probable cause is time-barred, and Plaintiff has not demonstrated that *contra non valentem* applies.

Like in *Garcia*, Plaintiff is also claiming she was unlawfully detained after legal process commenced. The Fifth Circuit held that Garcia's claim that he was unlawfully detained for sixteen months after legal process commenced was timely.[157] The Fourth Amendment protects against pretrial detention instituted pursuant to wrongful legal process.[158] "Legal process commences when 'a judge (or grand jury) first makes a reliable finding of probable cause.'"[159] "In Garcia's case, a judge first made a probable cause finding when Garcia appeared in court the morning after his arrest. This is the point at which legal process commenced."[160] Legal process "goes wrong" when a probable cause determination is baseless, such as when "a judge's probable-cause determination is predicated solely on a police officer's false statements."[161] The Fifth Circuit

---

[154] *Id.*

[155] *Id.*

[156] Rec. Doc. 22-1 at 16.

[157] *Garcia*, 784 Fed. App'x at 232.

[158] *Id.*

[159] *Id.* (quoting *Manuel v. City of Joliet*, 580 U.S. 357, 365 (2017)).

[160] *Id.*

[161] *Id.*

determined that "claims for detention pursuant to the 'wrongful institution of legal process' are more akin to malicious prosecution than false arrest, so such claims accrue when criminal proceedings end in a plaintiff's favor."[162]

In this case, it appears Plaintiff is also claiming that she was unlawfully detained for three days after legal process commenced. The incident report shows that an arrest warrant was signed at 5:17 AM on May 2, 2025.[163] The arrest warrant was signed by Commissioner Dan Foil, and it finds that Plaintiff was "lawfully arrested upon probable cause, without a warrant."[164] Legal process commenced when the Commissioner made this finding of probable cause. Under *Garcia*, a claim for detention pursuant to the wrongful institution of legal process is more akin to malicious prosecution than false arrest, so such claims accrue when criminal proceedings end in Plaintiff's favor.[165] Therefore, the Town Defendants' argument that the claim is time barred is unavailing.[166]

In the Amended Complaint, Plaintiff alleges that the criminal charges remain pending.[167] In *Heck v. Humphrey*, the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.[168]

---

[162] *Id.* (quoting *Winfrey v. Rogers*, 901 F.3d 483, 493 (5th Cir. 2018)).

[163] Rec. Doc. 22-1 at 26–28.

[164] *Id.* at 28.

[165] *Garcia*, 784 Fed. App'x at 232.

[166] *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018) ("A malicious-prosecution claim is based upon detention accompanied ... by wrongful institution of legal process. It does not accrue until the prosecution ends in the plaintiff's favor.") (internal citations omitted).

[167] Rec. Doc. 30 at 8.

[168] *Heck v. Humphrey*, 512 U.S. 477, 487–87 (1994).

In *Wallace v. Kato*, the Supreme Court applied a modified version of *Heck* to pretrial detainees.[169] The Supreme Court held:

> If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended . . . . If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.[170]

Plaintiff's unlawful detention claim directly challenges the veracity and validity of the charges and evidence against Plaintiff in state court. Therefore, this claim must be stayed pending resolution of the state court criminal proceedings. The Town Defendants also assert that Plaintiff has not pled sufficient facts to hold the municipality liable and that they are entitled to qualified immunity. The outcome of the criminal proceedings will impact both the *Monell* and the qualified immunity analysis. Accordingly, these issues cannot be resolved at this time.

### *C. Remaining State Law Claims and Vicarious Liability*

Finally, with respect to the claims that have not prescribed, the Town Defendants argue that Plaintiff did not state a claim under Louisiana law. As discussed above, all claims against the Police Officers except the defamation and slander,[171] and negligent or intentional infliction of emotional distress claims are prescribed. Thus, the Court addresses the sufficiency of the remaining claims in turn.

---

[169] *Wallace*, 549 U.S. at 393–94.

[170] *Id.*

[171] Under Louisiana law, defamation is committed either by libel or slander. *Hardesty v. Waterworks Dist. No. 4 of Ward Four*, 954 F. Supp. 2d 461, 475 (W.D. La. 2013). "Libel is defamation which is expressed by print, writing, pictures or signs, while slander is communicated by oral expressions of transitory gestures." *Id.*

Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name.[172] "Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."[173] Plaintiff alleges that the Police Officers made false and defamatory statements that "Plaintiff had committed criminal acts, which were published to third parties, including other officers, witnesses, and members of the public."[174] Plaintiff asserts that these statements were not privileged and were made with "actual malice, or at least with reckless disregard for the truth."[175] Additionally, Plaintiff asserts that "the publication of these false statements injured Plaintiff's reputation, exposed her to public contempt and ridicule and caused emotional and economic damages."[176] The Court finds that Plaintiff has sufficiently plead a cause of action for defamation and slander in the Amended Complaint. Further, Plaintiff asserts that the Police Officers' alleged defamatory statements were made within the course and scope of employment. Therefore, the Court finds derivative vicarious liability claims have been sufficiently pled to survive the motion to dismiss.[177]

Next, the Court turns to the negligent or intentional infliction of emotional distress claim. In order to recover for intentional infliction of emotional distress, a plaintiff must establish:

---

[172] *Costello v. Hardy*, 2003-1146 (La. 1/21/04), 864 So. 2d 129, 139.

[173] *Id.* (quoting *Trentecosta v. Beck*, 96–2388, p. 10 (La.10/21/97), 703 So. 2d 552, 559).

[174] Rec. Doc. 30 at 11.

[175] *Id.*

[176] *Id.* at 12.

[177] *Valenza v. Santos*, No. 16-1058, 2016 WL 7210347, at *3 (E.D. La. Dec. 13, 2016) ("An employer is liable for the torts of an employee committed while the employee is acting within the course and scope of his employment.").

> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[178]

Plaintiff alleges that the Police Officers "engaged in extreme and outrageous conduct by wrongfully arresting Plaintiff, using excessive force, publicly humiliating her, and spreading false accusations."[179] Plaintiff contends that the Police Officers conduct was "intended to cause—or recklessly disregarded the likelihood of causing—severe emotional distress."[180] Plaintiff alleges that she has suffered "severe mental anguish, humiliation, sleeplessness, anxiety, and loss of self-esteem as a result."[181] Thus, Plaintiff has sufficiently plead the claim for negligent or intentional infliction of emotional distress to survive the motion to dismiss. Further, because Plaintiff asserts that all wrongful actions committed by Police Officer were within the course and scope of employment the Court find that Plaintiff has sufficiently plead a vicarious liability claim against the Town of Franklinton and FPD.

## V. Conclusion

Plaintiff consents to the dismissal of her conspiracy claims. Additionally, the state law claims for excessive force, assault, battery, negligence, false arrest, and false imprisonment are prescribed. The Section 1983 claims for conditions of confinement, false arrest, and excessive force are also time barred. However, Plaintiff's state law claims for defamation, slander, and

---

[178] *Scamardo v. Dunaway*, 94-545 (La. App. 5 Cir. 2/15/95), 650 So. 2d 417, 419. Louisiana does not recognize an independent tort of negligent infliction of emotional distress. *Collett v. Weyerhaeuser Co.*, 2021 WL 2579801, at *5 (E.D. La. Jun. 23, 2021). "[H]owever, it is now well-established that [a] plaintiff may recover for negligent infliction of emotional distress unaccompanied by physical injury in certain situations." *Id.* "Recovery, . . . is limited to cases where 'special circumstances' exist involving the 'especial likelihood of real and serious mental distress.'" *Id.*

[179] Rec. Doc. 30 at 16.

[180] *Id.*

[181] *Id.*

negligent or intentional infliction of emotional distress appear to be timely on the face of the Amended Complaint, and Plaintiff has pled sufficient facts to state a claim. Additionally, the false imprisonment under Section 1983 is not untimely, but that claim must be stayed pending resolution of the underlying criminal case. If any parties believe it would be appropriate to stay the entire case pending resolution of the criminal case, they should file an appropriate motion.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants the Town of Franklinton and Justin Brown's Rule 12(b)(6) Motion to Dismiss[182] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent it seeks dismissal of the federal conspiracy claims under 42 U.S.C. § 1985 and state law conspiracy claims Louisiana Civil Code article 2324, the state law claims of excessive force, assault, battery, negligence, false arrest, and false imprisonment, the Section 1983 claims of conditions of confinement, false arrest, false imprisonment, and excessive force against the Franklinton Police Department, the Town of Franklinton, Justin Brown, and the FPD Police Officers. The motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that the Section 1983 claim for false imprisonment is **STAYED** pending resolution of the underlying criminal case.

**NEW ORLEANS, LOUISIANA,** this 22nd day of September, 2026.

Nannette Jolivette Brown

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[182] Rec. Doc. 35.